FILED

2016 DEC 13 AM 7:29

CLERK, U.S. [illegible]
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIA MILLS,

    Plaintiff,

-VS-                                      CASE NO.: 3:16cv1535-J-20 PDB

NAVY FEDERAL CREDIT UNION,

    Defendant.

_____/

## COMPLAINT

COMES NOW Plaintiff, MARIA MILLS, by and through the undersigned counsel, and sues Defendant, NAVY FEDERAL CREDIT UNION, and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like NAVY FEDERAL CREDIT UNION from invading American citizen's privacy and prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone

1

subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Duval County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the

2

judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiff is a natural person, and citizen of the State of Florida, residing in Duval County, Florida

10. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8).

11. Plaintiff is an "alleged debtor."

12. Plaintiff is the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant, NAVY FEDERAL CREDIT UNION, is a corporation which was formed in Virginia with its principal place of business located at 820 Follin Lane Vienna, VA 22180 and which conducts business in the State of Florida through its registered agent, Corporation Service Company located at 1201 Hays Street Tallahassee, FL 32301.

14. On or about July 2016, Plaintiff revoked her consent to be called by Navy Federal Credit Union by requesting that the calls stop. Specifically stating "You're not allowed to call this cell phone, stop calling". Each call NAVY FEDERAL CREDIT UNION made to Plaintiff's cell phone after said revocation was done so without the "expressed permission" of the Plaintiff and in violation of the TCPA.

15. Despite Plaintiff informing Defendant to stop calling the Defendant's autodialer calls to Plaintiff's cellular phone continued after July 2016. Between July 2016 and September 2016, Plaintiff made a non-exclusive log of thirteen (13) calls she received from the Defendant, including but not limited to the following calls:

**From the phone number (800) 352-6495**

    a)     July 25th 2016 (2)

    b)     July 27th 2016 (1)

    c)     August 9th 2016 (1)

    d)     August 15th 2016 (1)

    e)     September 1st 2016 (1)

16.    Plaintiff estimates approximately one hundred (100) calls to her cell phone post-revocation.

17.    The autodialer calls from Defendant came from telephone numbers including but not limited to (800) 352-6495 and when that number is called a pre-recorded voice or agent answers and identifies the number as belonging to NAVY FEDERAL CREDIT UNION.

18.    Defendant knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff cellular telephone number up to two (2) times a day from approximately July 2016 through the filling of this complaint, with such frequency as can reasonably be expected to harass, all in an effort related to collection of the subject account.

19.    The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

20.    NAVY FEDERAL CREDIT UNION is a "creditor" as defined in Florida Statute §559.55(5).

21.    NAVY FEDERAL CREDIT UNION called Plaintiff on Plaintiff's cellular telephone approximately one hundred (100) times since revocation in July 2016, in an attempt to collect a debt.

22.    NAVY FEDERAL CREDIT UNION attempted to collect an alleged debt from Plaintiff by this campaign of telephone calls.

23.     Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiff will testify that she knew it was an autodialer because of the vast number of calls she received and because she heard a pause when she answered her phone before a voice came on the line from NAVY FEDERAL CREDIT UNION.

24.     Plaintiff is the subscriber, regular user and carrier of the cellular telephone number (928) ***-8846, and was the called party and recipient of Defendant's calls.

25.     Beginning on or about July 2015, NAVY FEDERAL CREDIT UNION began bombarding Plaintiff's cellular telephone (928) ***-8846 in an attempt to collect on a credit card loan.

26.     NAVY FEDERAL CREDIT UNION has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiff's cellular telephone in this case.

27.     NAVY FEDERAL CREDIT UNION has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiff's cellular telephone in this case, with no way for the consumer, Plaintiff, or NAVY FEDERAL CREDIT UNION, to remove the number.

28. NAVY FEDERAL CREDIT UNION's corporate policy is structured so as to continue to call individuals like Plaintiff, despite these individuals explaining to NAVY FEDERAL CREDIT UNION they wish for the calls to stop.

29. NAVY FEDERAL CREDIT UNION has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

30. NAVY FEDERAL CREDIT UNION has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

31. NAVY FEDERAL CREDIT UNION has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

32. NAVY FEDERAL CREDIT UNION's corporate policy provided no means for Plaintiff to have her number removed from Defendant's call list.

33. NAVY FEDERAL CREDIT UNION has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

34. Not a single call placed by NAVY FEDERAL CREDIT UNION to Plaintiff were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

35. NAVY FEDERAL CREDIT UNION willfully and/or knowingly violated the TCPA with respect to Plaintiff.

36. From each and every call placed without consent by NAVY FEDERAL CREDIT UNION to Plaintiff's cell phone, Plaintiff suffered the injury of invasion of privacy and the intrusion upon her right of seclusion.

37. From each and every call without express consent placed by NAVY FEDERAL CREDIT UNION to Plaintiff's cell phone, Plaintiff suffered the injury of occupation of her cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from NAVY FEDERAL CREDIT UNION's calls.

38. From each and every call placed without express consent by NAVY FEDERAL CREDIT UNION to Plaintiff's cell phone, Plaintiff suffered the injury of unnecessary expenditure of her time. For calls she answered, the time she spent on the call was unnecessary as she repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

39. Each and every call placed without express consent by NAVY FEDERAL CREDIT UNION to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiff's cellular phone, which are designed to inform the user of important missed communications.

40. Each and every call placed without express consent by NAVY FEDERAL CREDIT UNION to Plaintiff's cell phone resulted in the injury of unnecessary expenditure of Plaintiff's cell phone's battery power.

41. Each and every call placed without express consent by NAVY FEDERAL CREDIT UNION to Plaintiff's cell phone where a voice message was left which occupied space in Plaintiff's phone or network.

42. Each and every call placed without express consent by NAVY FEDERAL CREDIT UNION to Plaintiff's cell phone resulted in the injury of a trespass to Plaintiff's chattel, namely her cellular phone and her cellular phone services.

43. As a result of the answered and unanswered calls described above, Plaintiff suffered an invasion of privacy; Plaintiff was also affected in a personal and individualized way by stress, anxiety, nervousness, embarrassment, distress and aggravation. Due to both answered and unanswered calls, Plaintiff suffered the expenditure of Plaintiff's time, exhaustion of Plaintiff's cellular telephone battery, unavailability of Plaintiff's cellular telephone while ringing, waste of Plaintiff's time, causing risk of personal injury due to distraction and trespass upon Plaintiff's chattels. All of the abovementioned were caused by, and/or directly related to, Defendant's attempts to collect a debt from the Plaintiff through the use of automated/predictive dialing technology.

## COUNT I
### (Violation of the TCPA)

44. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-three (43) as if fully set forth herein.

45. NAVY FEDERAL CREDIT UNION willfully violated the TCPA with respect to Plaintiff, especially for each of the auto-dialer calls made to Plaintiff's cellular telephone after Plaintiff notified NAVY FEDERAL CREDIT UNION that she wished for the calls to stop.

46. NAVY FEDERAL CREDIT UNION repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against NAVY FEDERAL CREDIT UNION for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

47. Plaintiff fully incorporates and realleges paragraphs one (1) through forty-three (43) as if fully set forth herein

48. At all times relevant to this action NAVY FEDERAL CREDIT UNION is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

49. NAVY FEDERAL CREDIT UNION has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

50. NAVY FEDERAL CREDIT UNION has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

51. NAVY FEDERAL CREDIT UNION's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against NAVY FEDERAL CREDIT UNION for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/Amy Ferrera, Esquire*
Amy Ferrera, Esquire
Florida Bar #: 15313
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 559-4846
amferrera@forthepeople.com
amoore2@forthepeople.com
Attorney for Plaintiff